STRINGFELLOW *v.* THE STATE, 26 Miss. Rep., 157.

### HOMICIDE.

A leading question is one which directly suggests the answer which is desired, or which embodies a material fact and admits of an answer by a simple negative or affirmative, though neither be directly suggested. But if the object of the question is to direct the mind of the witness to what is material; and if it relate to matter merely introductory, it should not be objected to although in form it be leading.

The prisoner's confession, when the *corpus delicti* is not proved *aliunde*, is insufficient to warrant a conviction.[1]

Error to Issaquena circuit court.   BARNETT, J.

Richard Stringfellow was indicted in the circuit court of Issaquena county for the murder of Decatur Whitley, and at the November term, 1852, of said court, the accused was found guilty of murder, and sentenced to be hung.   The defendant by his counsel, moved the court for a new trial, because of the introduction of illegal testimony by the state, and also for the refusal by the court to give certain instructions asked by the accused on the trial; all of which are fully set out in the opinion of the court.

The court below refused to grant the accused a new trial, when he prayed a writ of error to this court.

*F. Anderson* and *C. L. Buck* for plaintiff in error.

1. The question and answer embraced in the first bill of exceptions were illegal, because the question was a leading one, and because neither the letter was produced, nor the handwriting of the letter proved.   Turney v. State, 8 S. & M., 104.

2. The question objected to, as shown in the third bill of exceptions, was illegally permitted to be asked of the witness, because it was a leading question.

4. The question and answer embraced in the fourth bill of exceptions were illegal for the same reasons, and the additional reason, that the question was intended and calculated to bring out, and did bring out in answer, hearsay evidence; and it also assumed as proved what was not proved, and what the witness did not know, namely the death of Decatur Whitley.   Turney v. State, 8 S. & M., 104.

5. The venue was not proved by competent evidence.

[1] Pitts v. State, 43rd Miss., 472.

6. The court erred in the instructions given and refused, as the following authorities show :—1 Greenl. Ev., 261; 2 Phil. Ev., 232, n. 203; ib., 234, n. 204; Guild v. State, 5 Hals. R., 185; 2 Stark. Ev., (Tit. " Murder,") 509; 3 Greenl. Ev., 121; State v. Long, 1 Hayw. R., 524; 2 Hale; Pl. Cr., 290 ; 5 Humph., 388 ; 1 South., 231 ; 2 Russ. Cr. (last ed.), 824.

*D. C. Glenn*, attorney general.

I only refer the court to the following cases on the points presented :

1. For questions objected to as leading, see 1 Greenl. Ev., §§ 434, 435, 447.

2. For proof of venue, see Coon v. State, 13 S. & M., 246; 1 Greenl. Ev., §§ 100, 101, 103, 106, 128.

3. For weight of confessions generally, Whart. Am. Cr. Law, 253 and note; 1 Greenl., §§ 214, 215.

4. For proof of *corpus delicti*, 3 Greenl. Ev., § 30; ib., 131.

5. For sufficiency of confession to convict of homicide, without corroborating circumstances, Cowan's case, 7 Ired., 239; Henry's case, 2 Dev. & Batt., 396 ; Weir's case, 1 Dev., 363.

6. The court will not interfere with the action of the jury, unless flagrantly wrong. McCann v. State, 13 S. & M., 476; Nelms v. State, ib., 500 ; Cicely v. State, ib., 202.

SMITH, C. J. :

The plaintiff in error was indicted and tried in the circuit court of Issaquena county, and convicted of the murder of Decatur Whitley. The bill of exceptions filed to the decision of the court overruling the motion for a new trial embodies the whole of the evidence submitted to the jury. Several exceptions were taken to the rule of the court in reference to the admission of evidence on the trial. The charges of the court, and its refusal to instruct the jury as requested by the counsel for the plaintiff in error, are made the grounds of exception. The bills of exception filed to these various acts of the court present the questions which it becomes our duty to examine and decide. The questions arising upon the introduction of evidence naturally present themselves first for our consideration.

During the examination in chief of a witness called on the

part of the prosecution, the following question was propounded by the prosecuting attorney : " Did you ever receive a letter purporting to be from Decatur Whitley, and if so, at what place was it written and dated, where postmarked, and when did you receive it ?"   To which the prisoner's counsel objected, without stating the ground of objection.   The court disallowed the exception, and permitted the witness to answer.   The witness answered as follows, to wit : That he had received a letter purporting to have been written by Whitley.   It was postmarked at Ashton, and was dated on the inside from the island of Bunch's Bend Cut-off.   That he did not remember the date of the letter. It was received by him about three weeks before he came to Mississippi, in the latter part of October or the first of November.   The answer was excepted to, but the objection was overruled, and it was permitted to go to the jury.

It is now insisted that the question was a leading one, and the answer thereto illegal and incompetent evidence.

A leading question has been defined to be one which directly suggests the answer which is desired, or which embodies a material fact and admits of an answer by a simple negative or affirmative, though neither the one nor the other be suggested.[1]   2 Phil. Ev., 401 ; 1 Greenl. Ev., 434–5–6–7.   But in the examination of a witness, if the object be to direct his mind with the more expedition, to what is material, and if the question propounded relate merely to introductory matter, it should not be objected to, although in form it be leading.   Hence, it is not unfrequently a matter of great difficulty to distinguish between those questions which are not to be tolerated because they are leading, and those which are such in form, but in effect are only calculated to lead the mind of the witness to the subject of in-

[1] Snyder v. Snyder, 6 Binn., 483; Harrison v. Rowan, 3 Wash., 580; Parkin v. Moon, 7 C. & P., 408; Alison's Practice, 545; Tait on Ev., 427; Turney v. State, 8 S. & M., 104; Roscoe Cr. Ev., 130; Kemmerrer v. Edelman, 11 Harris, 143; Wilson v. McCullough, ib., 440; Lee v. Tinges, 7 Maryland, 215; Sexton v. Brock, 15 Ark., 345; Willis v. Quinsby, 11 Foster, 485; Bartlet v. Hoyt, 33 N. H., 151; Floyd v. State, 30 Ala., 511; Mathis v. Buford, 17 Tex., 152; Hofler v. State, 16 Ark., 534; Spear v. Richardson, 37 N. H., 23; Dudley v. Elkins, 39 N. H., 78; Allen v. State, 38 Ga., 395; Page v. Parker, 40 N. H., 47; Pelamourgis v. Clark, 9 Iowa, 1; Shields v. Guffey, 1 ib., 322; Hopper v. Commonwealth, 6 Grattan, 684; Roscoe Nisi Prius Ev., 171; 2 Russ. on Cr., 913; Nicholls v. Dowding & Kemp, 1 Stark N. P. C., 81; 2 Eng. C. L. R., 305; People v. Mather, 4 Wend., 231; 1 Archbold Cr. Pr. & Pl. 577; Peake's Ev., 196.

quiry. So in the case under consideration, if the question be determined by the test above laid down, it is, at least, very doubtful whether it should be held objectionable on the ground that it is leading; but if tried by the principle recognized in Turney v. State, 8 S. & M., 104, it would seem exceptionable on that account. In that case, after a witness, who had previously testified that about the 1st of December, 1854, the defendant had committed a rape upon her, she was asked, on her examination in chief, by the district attorney, " If the defendant then, or at any subsequent time, said anything in relation to this matter, to dissuade you from disclosing it? State when, and where, and what he said." Again. " If defendant, in any of his antecedent conversations, offered property or any other advancement to you, in order to attach you to him, say so." And again the witness was asked, " If any time subsequent to this transaction, the defendant said anything about what punishment the laws of Mississippi would inflict on him or you, or both? State all." These questions were, after mature deliberation, held by a majority of this court to be leading; and because they were permitted to be propounded to the witness, the judgment of the circuit court was reversed. It is obvious that if these were leading questions, the one under consideration was improper.

The following questions, set out in the second and fourth bills of exception, are objected to on the same grounds, to wit: 1. " If he (witness) was induced to leave Alabama and go to Mississippi by reason of a letter received from Decatur Whitley?" 2. " Did you carry property from Bunch's Bend in Issaquena county, as the property of Decatur Whitley, deceased?" The answers to these questions are set out in the bills of exception, and are objected to as illegal and incompetent testimony.

It is obvious that the latter question was illegal. No direct evidence had been adduced to prove that a homicide had been committed upon the person of Decatur Whitley, or that the killing occurred within the county of Issaquena. If the prosecution failed to establish either of these facts, the acquittal of the prisoner would necessarily ensue. It was therefore indispensable to prove, not only that Whitley was dead, but that he had been killed in the county of Issaquena. If it could be

proved that Whitley had been murdered, and that about the alleged time of the murder he was in the county of Issaquena, the jury might infer that the deed was there perpetrated. If the fact that the witness had carried property, as the property of the deceased, from that place to Alabama, conduced to prove that he was at the time alleged in that county, the question was clearly leading, and it was particularly objectionable because it assumed a fact not proven, that is, the death of Whitley.

Another and a more serious objection to the first and last questions which we have been considering, arises when they are looked at in a different point of view. The matter intended to be extracted by these questions was irrelevant, and therefore incompetent evidence in the cause. By the first question, the witness is asked if he had ever received a letter purporting to be from Decatur Whitley? If so, at what place was it dated, and where postmarked? Supposing the witness to state, as in fact he did, that he had received a letter purporting to be from Whitley, and that it was dated at the place and near the time when the alleged homicide occurred, it will certainly not be contended that such an answer was competent evidence. If it were admitted to have been competent to give parol evidence of the contents of the letter, without first proving that it was in the handwriting of Whitley, or accounting for its non-production, the answer of the witness would not ascend upon the roll of testimony, even to the dignity of hearsay evidence. But let it be assumed that the letter was proved to be in the handwriting of Whitley, and that it was dated from the island of Bunch's Bend Cut-off. Upon such admission, a fact would be established from which the jury might legitimately have drawn the conclusion that the letter was in point of fact written by Whitley whilst upon the island; but it could not certainly warrant the presumption that he was there at any other point of time, and more especially at the date of the alleged murder. If the fact had been conclusively proved, by direct evidence, that Whitley was, within some short time before the alleged homicide, upon the island, the presumption might have been feebly indulged that he remained there until its occurrence. But to make the answer of the witness, assuming that the letter was in the hand-

writing of Whitley, conduce to prove the question at issue, it would be essential to base the latter presumption, that is, that Whitley was in fact upon the island at the time when the alleged homicide was committed, upon the presumption that he was upon the island at the date of the letter, inferred from the fact that the witness had received a letter in the hand-writing of Whitley, bearing date at the island. This would certainly be extending the doctrine of presumptions beyond the limits recognized by either reason or authority.

The same observations are applicable, to some extent, to the last question and answer. The fact that the witness had carried property from Bunch's Bend in Issaquena county to Alabama, as the property of Decatur Whitley, deceased, might constitute the basis of a presumption, that the property so transported was, in truth, the property of the deceased, but it could not warrant the inference that Whitley was ever in the county, not having been otherwise proved to have been there, much less could it, upon any principle of law, or logic, sustain the conclusion, that he was there at the date of the alleged murder.

The questions which come next in order, arise upon the exceptions taken to the instructions of the court.

On the part of the defense the court was requested to instruct the jury as follows, to wit: 1. "Although the jury may believe from the evidence in the cause, that the prisoner confessed to the negro King that he had killed Decatur Whitley, yet if that confession is unsupported by other proof that said Whitley was killed, they must find the prisoner not guilty." 2. "That the best evidence that Decatur Whitley was killed, is the testimony of some one who saw him when killed, or who has seen his dead body; and unless the jury believe, from the testimony in the case, that some one who has testified before them saw Whitley killed, or his dead body, they will find the defendant not guilty." These instructions were disallowed by the court.

The court was further requested to instruct the jury, 1. "That if they believe from the evidence that the prisoner made any confessions or admissions of guilt, such confessions or admissions are to be received by them with great caution, and, unless supported by other proof in the cause, are not sufficient to convict."

This charge the court refused to give; but gave the following as a modification of it, to wit: "That if the jury believe from the evidence that the prisoner made any confessions or admissions of guilt, such confessions or admissions are to be received by them with great caution, and unless fully believed by the jury, are not sufficient to convict." 2. "That before the jury can convict the defendant, it must be proved conclusively that Decatur Whitley was killed, and that the extrajudicial confessions or admissions of defendant that he killed him, unless supported by other proofs in the cause, are not sufficient to convict." This instruction the court also refused to give; but gave the following as a modification thereof, to wit: "That before the jury can convict, it must be proved conclusively that Decatur Whitley was killed, and that the extrajudicial confessions or admissions of defendant that he killed him, ought to be weighed by the jury with great caution, and unless sufficient to satisfy them that Whitley was killed, and by defendant, they ought to acquit."

Without pausing to consider the minor objections which were urged against these instructions, we will at once proceed to the examination of the main question which they present; that is, Whether the extra judicial confessions of a prisoner charged with a capital felony is sufficient, without any proof whatever, independent of the confession of the *corpus delicti,* to authorize a verdict of guilty?

It is well settled by the law of England, that a voluntary and unsuspected confession of guilt, whether made in the course of conversation with private individuals, or under examination before a magistrate, is clearly sufficient to warrant a conviction whenever there is independent proof of the *corpus delicti.*[1] Will. Circum. Ev., 61. According to some elementary writers,

[1] 5 Halstead, N. J. R., 163, 185; Haywood, 455, 524; 1 Greenl. Ev., 217-219, 220; 3 ib., 30; Rex v. Benditt, 4 B. & Ald., 123; Pitts v. State, 43 Miss., 472; Bergen v. People, 17 Ills., 427; 3 Parker Cr. R., 401; 2 Hawk. P. C., ch. 46, § 18; Brown v. State, 32 Miss., 433; 1 Leach Cr. Law, 311; 1 Phill. Ev., 532; Brown v. State, 33 Miss., 433; Tyner v. —, 5 Humphreys, 383; Roscoe Cr. Evi., 38, *et seq.*; People v. Hennesey, 15 Wend., 147; Keithler v. State, 14 S. & M., 192; Stephen v. State, 11 Ga., 225; People v. Badgeley, 16 Wend., 63; State v. Fields, Peck Rep., 140; State v. Gardiner, Wright, 392; 1 Archbold Cr. Pr. & Pl., 406; Roscoe Cr. Ev., 29. See Russ. on Cr., 825; Wharton's Am. Cr. Law, 683; Burrill on Circ. Ev., 498, 499; Rex v. Eldridge, Russ. & Ry., 440.

confession alone is sufficient to warrant conviction, without any such evidence. By Russell, in his Treatise on Crimes, it is said, that such confessions are admissible in evidence as the highest and most satisfactory proof, because it is fairly to be presumed, that no man would make such a confession against himself if the facts confessed are not true. And that the first authorities have now established that a confession, if duly made and satisfactorily proved, is sufficient alone, without any corroborating evidence *aliunde*, to warrant a conviction. 2 Russ. on Cr., 824. The text in Roscoe's work on Criminal Evidence is to the same effect (p. 28). Foster and Blackstone maintained a different opinion; the latter holding that confessions, even in cases of felony at common law, were the weakest and most suspicious of all testimony, very liable to be obtained by artifice, false hopes, promises of favor or menaces, seldom remembered accurately, or reported with precision, and incapable, in their nature, of being disproved by other negative testimony. 4 Bl. Com., 357.

The cases cited in support of the text in Roscoe and Russell, are, Wheeling's case, 1 Leach, 311; Eldridge's case, Faulkner's case, White's case, and the case of King v. Tippet, reported in Russ. & Ry. Upon examination it will be found, that in each of these cases, with the exception of that of Wheeling's, there was, independent of the confession, some corroborating circumstance which tended to prove the commission of a felony. Russ. on Cr., 834 (n. b); 1 Greenl. Ev., 279, n. In reference to Wheeling's case, it is observed in Greenleaf's Evidence, that " it is too briefly reported to be relied on." The whole statement of that case in 1 Leach, 311, is, that " it was determined that a prisoner may be convicted on his own confession, when proved by legal testimony, although it is totally uncorroborated by any other evidence." It is manifest that this statement may mean, that where the commission of a felony is proved by evidence *aliunde*, a prisoner may be convicted on his confession, notwithstanding there be nothing to corroborate his confession as to his agency in the commission of the felony. It does not, therefore, appear that it has ever been expressly decided that the naked confession of a prisoner alone, and without any other evidence, is sufficient to authorize a jury to convict.

In the valuable treatise on circumstantial evidence, the author, commenting on this subject, and referring to the cases cited by Russell and Roscoe, observes, " that, according to some authorities, confession alone is a sufficient ground for conviction, even in the absence of any such independent evidence (that is evidence tending to establish the *corpus delicti*); but the contrary opinion is most in accordance with the general opinions of reason, justice and humanity, the opinion of the best writers on criminal jurisprudence, and the practice of their enlightened nations. Nor are the causes adduced in support of the doctrine in question very decisive, since in all of them there appears to have been some evidence, though slight, of confirmatory circumstances, independently of the confession."

In the United States, the very few adjudicated cases on the question under consideration, are not harmonious. In the State of North Carolina, State v. Cowan, 7 Ired., 239, it was decided, that a prisoner may be convicted on his own unbiassed confession without corroborative evidence establishing a felony. The supreme court of the State of New Jersey appears to have adopted the contrary doctrine, and to have held that the naked confession of the prisoner was not sufficient to justify a verdict of guilty. State v. Aaron, 1 South., 231 ; Guild's case, 5 Hal., 163.

This question is one of the first impression in this court, and its importance has induced us to bestow upon it the greatest deliberation which circumstances would permit. We believe the doctrine which holds that, in capital felonies, the prisoner's confession, when the *corpus delicti* is not proved by independent testimony, is insufficient for his conviction, best accords with the solid principles of reason, and the caution which should be applied in the admission and estimate of this species of evidence. We hold, therefore, that the court erred in refusing to instruct the jury, that the extra-judicial confession of a prisoner, without proof *aliunde* of the commission of a felony, and of the death, was insufficient to warrant his conviction.

As we reverse the judgment for the errors already noticed, it will be unnecessary to examine the remaining exceptions.