## SUPREME COURT — SPECIAL TERM — KINGS COUNTY.

### February, 1917.

## THE PEOPLE v. ETHEL BYRNE.

(99 Misc. 1.)

CONSTITUTIONAL LAW—STATUTES—WHEN LEGISLATURE MAY IN EXERCISE OF POLICE POWER DETERMINE THAT GENERAL DISSSEMINATION OF INFORMATION AND SALE OF CERTAIN ARTICLES ARE PREJUDICIAL TO MORALS—WHEN MOTION FOR CERTIFICATE OF REASONABLE DOUBT DENIED—APPEAL—PENAL LAW, § 1142.

A statute which violates no constitutional provision will not be declared void because deemed by some to be opposed to natural justice.

The Legislature in the exercise of the police power may determine whether the general dissemination of information upon the subject of birth control and the sale of articles designed to prevent conception are prejudicial to public morals and inimical to the welfare and interests of the community.

That some do not agree with such legislation and may feel aggrieved thereby does not make it unconstitutional, nor can it be deemed class legislation because those who favor birth control believe that the right to spread such doctrine should not be curtailed.

Where defendant was convicted of a violation of section 1142 of the Penal Law upon proof that she sold an article to be used by women to prevent conception and in conjunction therewith disseminated literature dealing with the question of conception and setting forth various ways and means by which it could be prevented, a motion for a certificate of reasonable doubt on the sole ground that said statute is unconstitutional will be denied.

Where an appeal from such conviction is undetermined the fact that the governor released defendant from imprisonment before the expiration of her sentence does not preclude a decision of said motion.

MOTION for a certificate of reasonable doubt.

*Harry E. Lewis, District Attorney (Harry G. Anderson,* of counsel), for People.

*Jonah J. Goldstein,* for defendant.

CROPSEY, J.:

The defendant stands convicted. The information in Special Sessions charged the violation of section 1142 of the Penal Law and also contained a count under section 1141. The evidence introduced showed that the defendant had sold an article to be used by women, which was designed to prevent conception. This was the basis of the information and resulting conviction. The article was not worth more than fifty cents, but was sold by the defendant for two dollars. In conjunction with the sale the defendant disseminated literature dealing with the question of conception and setting forth various ways and means by which it could be prevented. One of these pamphlets is labeled " What Every Girl Should Know." This contains matters which not only should not be known by every girl, but which perhaps should not be known by any. The distribution of these pamphlets, especially to girls just coming into womanhood, would be a shocking disgrace to the community. The defendant claims that her undertaking in furnishing this information and these appliances is prompted by a sole desire to benefit her sex. However that may be, the evidence shows there was a decidedly commercial aspect to the undertaking, for not only was the article sold at a great profit but in addition a regular fee was charged to each visitor; and the visitors numbered 100 or more a day.

The defendant moves for a certificate of reasonable doubt. She urges as her only point that the statute under which she has been convicted is unconstitutional. Her claim is that the statute is unreasonable and oppressive and contains no exception; that it is not an exercise of the police power as it does

not promote the health, life, morals or welfare of the community, and that it interferes with the free exercise of conscience and the pursuit of happiness.

Section 1142 of the Penal Law was enacted in 1887, and section 1141 was amended in the same year. Both sections have been enforced since that time and a number of convictions had under them. They have never been held unconstitutional. Section 1142 makes it a crime to sell, give away, or exhibit, or offer so to do, or have in possession with such intent, or to advertise for sale or distribution, any article or drug for the prevention of conception, or purporting or represented to be for that purpose, or to give information orally as to when or where such an article or drug can be obtained, or to manufacture either the article or drug. It is urged by the defendant that this is an unreasonable and oppressive enactment, in that it prevents women who do not wish to bear children from adopting means to obviate that result. But this section is not directed against the use of such articles or drugs. It merely prohibits their manufacture and distribution. If it did in terms prevent the use of the articles and made their use a crime, it would nevertheless be constitutional. And this would be so even if there were no exception made to the provision.

The defendant contends that the statute violates sections 1 and 6 of article I of the State Constitution and the Fourteenth Amendment of the Federal Constitution. Section 1, referred to, provides: " No member of this State shall be  *  *  * deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers." Section 6 declares that no person shall be " deprived of life, liberty or property without due process of law." The Fourteenth Amendment is of similar purport.

Unless restrained or prohibited by the Constitution, the legislative power is unlimited. The claim that statutes may be declared void because deemed to be opposed to natural justice,

when they do not violate any constitutional provision, does not find support in law. (Bertholf v. O'Reilly, 74 N. Y. 509; People v. West, 106 id. 293; Tiedeman State & Federal Control, 9; Cooley Const. Law, 30.) The so-called police power is vested inherently in the Legislature and is not derived from any constitutional provision. It has never been surrendered, but on the contrary has been exercised to the fullest extent. (House v. Mayes, 219 U. S. 270, 282; South Carolina v. United States, 199 id. 437, 454.) The Fourteenth Amendment to the Federal Constitution did not interfere with the exercise of this power by the States. (Barbier v. Connolly, 113 U. S. 27, 31; Keller v. United States, 213 id. 138, 145.)

It is undisputed that by the exercise of the police power the State may regulate the relative rights and duties of all persons within its jurisdiction, so as to guard the public safety, protect the public morals, secure the public health and promote the common good and welfare. (House v. Mayes, *supra;* Jacobson v. Massachusetts, 197 U. S. 11, 25.) Can it be said that this statute was not properly enacted under the exercise of this power?

The person asserting the unconstitutionality of an enactment has the burden of establishing his contention. All legislative acts are presumptively constitutional and they will not be nullified unless it is clearly shown that they were in excess of legislative power (Chicago, B. & Q. R. R. Co. v. McGuire, 219 U. S. 549, 565, 567; Price v. Illinois, 238 id. 446, 453; Rast v. Van Deman & Lewis, 240 id. 342, 357, 365); even "the earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance." (Erie R. R. Co. v. Williams, 233 U. S. 685, 699.)

The police power "may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and preponderant opinion to be greatly and immediately necessary to the public welfare." (Noble State Bank v. Haskell,

219 U. S. 104, 111.) It justifies the enactment of laws designed for the protection of the public and to guard against some danger, real or anticipated, in our social or commercial life. (People ex rel. Nechamcus v. Warden, etc., 144 N. Y. 529, 535.) The general and long continued belief as to the desirability or necessity for the legislation must be considered in determining its constitutionality. (Muller v. Oregon, 208 U. S. 412, 420, 421; Matter of Viemeister, 179 N. Y. 235, 240.)

It was proper for the Legislature to determine whether the general dissemination of information upon the subject of birth control and the sale of articles designed to prevent conception were prejudicial to public morals and inimical to the welfare and interests of the community. That this defendant does not agree with the legislation and feels aggrievd that it should have been enacted does not make it unconstitutional. The claim is that she and others believe that there should be birth control and that the right to spread that doctrine should not be curtailed, but this does not make the enactment class legislation. (People v. Havnor, 149 N. Y. 195; People ex rel. Armstrong v. Warden, 183 id. 223; Wither v. Bloem, 163 Mich. 419, 35 L. R. A. [N. S.] 628.) The same situation exists regarding most, if not all, statutes defining the different crimes. Some people will protest because the enactments do not agree with their views. The Legislature has declared that the spread of information on this subject and the sale of articles designed to accomplish its objects are acts detrimental to public morals and welfare. The defendant has not shown this to be otherwise, and the court is of the opinion that the public good justified the passage of this statute and requires its enforcement. The State has the "primary right of self preservation" (People v. Most, 171 N. Y. 423, 431), and the question of propagation is necessarily related to this right.

The literature distributed by the defendant is as harmful as

the use of the articles sold. The book, entitled " What Every Girl Should Know," is especially objectionable, as has been stated. It contains pictures of certain organs of a woman, in addition to the text concerning which comment has already been made. The distribution of this book and the diffusion of knowledge of its contents, especially among girls and boys coming into the period of adolescence, would produce most harmful results. The information would make people generally believe that by using the means suggested the act of intercourse could be had without the fear of resulting pregnancy. While there are other reasons that keep unmarried people from indulging their passions, the fear that pregnancy will result is one of the potent ones. To remove that fear would unquestionably result in an increase of immorality.

A statute making it a crime to advertise of the treatment or cure of venereal diseases has been held to be a valid exercise of the police power of the State, as it is against public policy to advertise that such diseases can be easily and cheaply cured; " it has a decided tendency to minimize unduly the disastrous consequences of indulging in dissolute action." (State v. Hollinshead, 77 Ore. 473, 477, 151 Pac. Rep. 710. See, also, People v. Kennedy, 176 Mich, 384, 395 et seq.) The defendant in the Hollinshead case could have claimed, as does this defendant, that his act in advertising was in the interest of the people who could be benefited by his treatment, but that is not the question which determines the constitutionality of statutes.

The contention that the section is unconstitutional because it " interferes with the free exercise of conscience and the pursuit of happiness " could probably be made by some defendant against every penal statute. No authority is cited in support of this contention. If such individual's conscience and desire for happiness were to determine whether a law is constitutional, none of them could be upheld. Defendant's counsel, in his brief, says that by this statute " a woman is denied her absolute

right of enjoyment of sexual relations unless the act be so conducted that pregnancy may be the result of the act. This clearly is an infringement upon her free exercise of conscience and pursuit of happiness." The same statement could be made with equal force about the statute defining adultery or a statute that might be enacted making fornication a crime, or any other definition of a crime..

We have discussed the question as though there were no exceptions in the statute. But section 1145 of the Penal Law provides that physicians may use or prescribe the drugs and articles referred to in sections 1141 and 1142, " for the cure or prevention of disease," and that such articles may be supplied to them or on their prescription. The defendant maintains that this is not an exception as it does not permit physicians generally to use the articles when necessary, but only to work a cure or prevent a disease. We read this section otherwise. Under it, a physician would be justified in prescribing the prohibited articles or drugs, if in his opinion the health or condition of the patient required it. (People v. Byrne, N. Y. L. J., Dec. 5, 1916.)

There is no reasonable doubt of the constitutionality of the statute in question, and as the guilt of the defendant is clear, the motion for a certificate of reasonable doubt must be denied.

The fact that the Governor has thought it proper in the exercise of the power given to him by the Constitution to release this defendant from her imprisonment before the expiration of her sentence does not make the decision of this motion an academic one. The appeal from the conviction still stands unless withdrawn, and hence this motion should be passed upon.

Motion denied.